IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-30207
_____


DOLORES ELLIOTT,

Plaintiff-Appellant,

versus

ACROMED CORPORATION; ET AL,

Defendants,

SYNTHES; SYNTHES, INC.;
SYNTHES NORTH AMERICA, INC.,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(94-CV-2863-F)
_____
February 12, 1999

Before JOLLY, WIENER, and PARKER, Circuit Judges.

PER CURIAM:[*]

In this products liability case implicating the design defect
facet of the Louisiana Products Liability law ("LPLA") and its
requirement that the claimant prove, inter alia, the existence of
a superior alternative design, Plaintiff-Appellant Dolores Elliott
asks us to reverse the district court's grant of summary judgment
dismissing her case. Elliott's claims of reversible error by the
district court in its denial of her motion for a continuance of

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

discovery and its grant of summary judgment to Defendants-Appellees ("Synthes"), rely on two incidents of delayed compliance by Synthes with discovery requirements, one of which was sanctioned. The incident that drew a sanction is the delayed delivery by Synthes of some 25,000 documents in the multi-district litigation proceedings styled "In re: Orthopedic Bone Screw Products Liability Litigation," MDL No. 1014, to which Elliott's case had been transferred and from which it was subsequently remanded to the Eastern District of Louisiana. The second tardy delivery of documents relied on by Elliott is the post-summary judgment production by Synthes, pursuant to orders of the court in MDL 1014, of the 1991 version of a Synthes manual recommending the "Notched Plate" system for spinal fixation, thereby differing from the 1979 version of the same manual, which recommended the "Dynamic Compression Plate" system actually used in Elliott's operation in 1987. In essence, Elliott contends that if she had been granted a continuance and thus obtained additional time in which to produce evidence of an available superior alternative design, she could have done so by examining the myriad documents delivered both before and after summary judgment.

Having completed our review of the record on appeal and our consideration of the applicable law and the arguments of the parties as advanced in their respective appellate briefs and orally to this court, we are satisfied that the district court did not abuse its discretion in denying Elliott's continuance motion; and we are equally satisfied by our de novo review that the court's

grant of summary judgment in favor of Synthes was proper. Counsel for Elliott concedes that a subsequent perusal of the 25,000 documents disclosed nothing that would help to satisfy Elliott's Louisiana burden of producing an alternate design; therefore the denial of a continuance was not only a proper exercise of discretion, but was non-prejudicial as well.

As for Elliott's claim grounded in Synthes' post-judgment delivery of the evidence regarding the two manuals, she has failed to demonstrate how — even if this material were in the record of her case, which it is not — she could meet her alternate design burden. Elliott's products liability claim of design defect features the placement of a screw into a pedicle, a procedure common to both the earlier Dynamic Compression Plate design and the later Notched Plate design. The design of the screw itself, though, appears to have remained unchanged, and it is the design of the failed screw on which Elliott's products liability claim is based.

The rulings of the district court and its grant of summary judgment in favor of Synthes are therefore, in all respects, AFFIRMED.